IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CHEREE CARTER,

    Plaintiff,

v.                           CASE NO.:

CUMULUS BROADCASTING, LLC.,

                                PLAINTIFF DEMANDS A
    Defendant.              TRIAL BY JURY.

## COMPLAINT

**COMES NOW**, the Plaintiff, CHEREE CARTER, by and through her undersigned counsel, and files this Complaint against the Defendant, CUMULUS BROADCASTING, LLC, and as grounds thereof would show as follows:

## NATURE OF THE CASE

Plaintiff, CHEREE CARTER, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e ("Title VII") and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to sex/gender discrimination arising out of unlawful employment practices.

## JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Act of Congress, known

as the "Civil Rights Act of 964," codified as 42 U.S.C. §2000e *et seq.*, as amended by the "Civil Rights Act of 1991."

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff is an individual who resides in the State of Florida.

4. Defendant is an individual who committed unlawful employment practices within the State of Florida and, upon information and belief, currently conducts business in the State of Florida.

5. The Defendant has substantial contacts with the State of Florida.

6. The substantial part of the unlawful employment practices alleged in this Complaint were committed in part in Brevard County, making the U.S. District Court for the Middle District of Florida the proper venue under 28 U.S.C. §1391(b)(2).

## ADMINISTRATIVE EXHAUSTION

7. Plaintiff filed her charge with United States Equal Employment Opportunity Commission ("EEOC") through their online portal on or about February 4, 2020, then dual filed the charge with the Florida Commission on Human Relations on February 7, 2020.

8. On March 26, 2020, the Florida Commission on Human Relations dismissed the Plaintiff's complaint as a duplicate of a pending EEOC investigation, and the EEOC retained jurisdiction of Plaintiff's case, Charge No. 510-2020-

02306. In that charge, Plaintiff alleged that the Defendant subjected Plaintiff to a hostile work environment, in which she received disparate treatment and unequal pay; was subjected to verbal and physical threats; and suffered from significant mental anguish as a result of discrimination based on her gender, all in violation of Title VII.

9. The EEOC issued a Right to Sue for Plaintiff's Charge on October 2, 2020.

10. The Plaintiff has 90 days from the issuance of the Dismissal and Notice of Rights to file her Title VII suit.

11. The Plaintiff has timely filed her Title VII suit.

12. The Plaintiff has exhausted all administrative remedies available prior to filing this Complaint.

## PARTIES

13. Plaintiff is a citizen of the United States of America, who currently resides in Brevard County, Florida.

14. The Plaintiff is over the age of nineteen (19) years old.

15. Upon information and belief, the Defendant is headquartered in Atlanta Georgia, but is an employer in the State of Florida within the meaning of 42 U.S.C. § 2000e(b), in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration under Title VII.

16. Upon information and belief, the Defendant does substantial business at its Melbourne, Florida office, located at 1800 W. Hibiscus Blvd #138, Melbourne, FL 32901.

17. Upon information and belief, a substantial amount of the unlawful employment practices against Plaintiff took place at the Melbourne, Florida location.

18. Defendant was Plaintiff's employer during all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

19. The Plaintiff re-alleges and incorporates by reference paragraphs one (1) through fourteen (18) above with the same force and effect as if fully set out in specific detail herein below.

20. Plaintiff is a woman.

21. In 2014, the Plaintiff was hired as a full-time employee for Cumulus Broadcasting, LLC at its Melbourne, Florida location.

22. From 2014 to 2019, the Plaintiff worked as a radio personality for Cumulus Broadcasting, LLC's Melbourne, Florida location.

23. From 2014 to 2019, In 2014, Plaintiff was hired to be a full time employee for Cumulus Broadcasting, LLC. She Carter initially started as a co-host to

Cumulus employee Timmy Vee, then spent more than six months operating a morning show on her own after Mr. Vee's departure from the company.

24. In 2015, the Plaintiff was assigned a co-host, Tony Zazza. With Mr. Zazza's arrival, Cumulus attempted to push Mrs. Carter out of her successful position, rebranding her morning show *Zazza Mornings,* and only amending the title to *Zazza Mornings with Cheree* when listeners expressed their displeasure.

25. On September 1, 2016, the Plaintiff entered into a three year employment contract with Cumulus Broadcasting, LLC. Per that contract, the Plaintiff's contract was set to last until August 30, 2019, at which point the Plaintiff would be considered an at-will employee.

26. From 2015 to 2017, the Plaintiff and co-host Tony Zazza maintained a friendly work relationship.

27. Beginning in 2017, Plaintiff experienced ongoing discrimination due to her gender. This discrimination ultimately resulted in Plaintiff's termination in August 2019.

28. In March 2017, Plaintiff informed Zazza and upper management at Cumulus Melbourne that she was pregnant. Upon the Plaintiff's declaration that she was pregnant, Zazza immediately informed the Plaintiff she needed to get an abortion. Zazza expressed concerned about the morning show's recently

syndicated status and believed that the Plaintiff's pregnancy would make the show unmarketable.

29. When Plaintiff refused to abort her pregnancy, co-worker relations soured immediately. Zazza threatened Mrs. Carter, and then began to sabotage Mrs. Carter's career.

30. Zazza intentionally made Plaintiff's work difficult during her pregnancy, such as using radio games to force Plaintiff to eat things that could be considered harmful during pregnancy.

31. During the Plaintiff's maternity leave, Zazza and a male co-host, Derek Pitts, hosted the morning show together. Ratings plummeted during this period.

32. On October 30, 2017, Mrs. Carter gave birth. Ratings rose upon Mrs. Carter's return, but relations with Zazza remained hostile.

33. Zazza actively discouraged Plaintiff from discussing her pregnancy or her child while on-air.

34. From October 30, 2017, Zazza began withholding show sheets, which provided an essential outline of the topics to be discussed during the show, from Plaintiff, which made it almost impossible to perform her job. Plaintiff was also barred from participating in the creation of show sheets, despite such participation being common practice within the radio industry. Zazza also controlled the morning show's Facebook and email accounts, refusing to

allow Plaintiff access to the passwords, despite the social media obligations tied to the Plaintiff's job description.

35. Plaintiff attempted to seek relief by informing upper management of the hostile work environment, but upper management took no action against Zazza.

36. After returning from her maternity leave, Plaintiff was under more intense scrutiny from her supervisors. Plaintiff and Zazza attended mandatory "coaching calls," during which Talent Coach Jimmy Steele initiated teleconferences from his location in Mobile, Alabama, with Plaintiff.

37. Upon information and belief, those coaching calls took place weekly, with Steele initiating the calls in Mobile, Alabama each time.

38. Upon information and belief, the coaching calls were means to bully the Plaintiff while ignoring any mistakes by her male co-host, which were blatant examples of the Defendant's gender-based workplace discrimination.

39. By Steele's own admission, the coaching calls were a method to "pick on" and "beat up" the Plaintiff.

40. By Steele's own admission, the coaching calls were based upon segments of the morning show that Steele did not listen to.

41. Plaintiff suffered significant emotional distress due to the coaching calls.

42. On November 15, 2018, Market Manager Gary Mertins and HR Merry Bigelow held a meeting with Plaintiff and Zazza to discipline Plaintiff regarding a coaching call with Steele. Within that coaching call, Plaintiff divulged that she had been denied access to show sheets and account passwords by Zazza.

43. Upon Plaintiff's statement about the denial of access to show sheets and account passwords, Zazza became angry, invaded Plaintiff's personal space, and shouted at her. Plaintiff, having previously been assaulted by Zazza was again placed in fear of her safety, and she left the meeting.

44. Plaintiff received a written memorandum the following day by Gary Mertins, who did not witness the incident and Zazza remained employed with no recourse or action by upper management for his behavior.

45. Zazza was instrumental in limiting Plainitiff's access to show material through show sheets, and passwords, but was not disciplined for such actions.

46. Plaintiff avers that it was a company policy and/or procedure to have automatic recording of all studios when occupied whether those studios were designated on-air or not. No recordings were produced by Cumulus during the EEOC complaint proceeding.

47. Plaintiff avers Zazza was aggressive towards her, and that Gary Mertins and Merry Bigelow did not reprimand Zazza for his violations of the human

resources code of conduct or unprofessional conduct, thereby indicating that the company and management condoned Zazza's aggressive and unprofessional behavior towards Plaintiff.

48. Gary Mertins also stated that Plaintiff was engaging in social media during the morning show, and used such social media use as a contributing factor for Plaintiff's write up, despite Plaintiff's contractual obligation to engage in social media for purposes of staying engaged with listeners. The write up she received specifically noted that she was being disciplined for the very conduct required under her contract.

49. Additionally, Zazza was not disciplined, despite engaging in the same behavior by interacting with listeners on social media at the same times as the Plaintiff. Zazza was also not ordered to provide Plaintiff show sheets.

50. On April 1, 2019, Mr. Joseph Browning started his position as operations manager at Cumulus Melbourne. Mr. Browning, as part of his duties, was also the direct supervisor over Plaintiff and Zazza.

51. Mr. Browning and Plaintiff had an excellent working relationship, and Mr. Browning gave the Plaintiff specific directives concerning her role on the morning show, including a directive to stay engaged on social media during the show's on-air times.

52. Despite this directive, on July 10, 2019, Market Manager Gary Mertins and HR Director Merry Bigelow met with Plaintiff once more for social media use during working hours. Mr. Browning was present at this meeting and attempted to intervene on the Plaintiff's behalf, but the information fell on the deaf ears of Merry Bigelow and Gary Mertins.

53. During the July 10, 2019 meeting, Plaintiff was accused of unprofessional behavior and excessive social media use. Gary Mertins seemed to partially base these allegations of unprofessional behavior on Plaintiff's alleged inability to stay on topic, yet Gary Mertins did not take into account the conduct of Zazza precluding the Plaintiff from access to show sheets and passwords. Additionally, Mertins took no action against Zazza for the refusal to issue show sheets to Plaintiff. During this meeting, Mr. Browning stated that Plaintiff's social media use and her interactions toward Zazza in regard to obtaining access to the show sheets, passwords, and on air show material was in response to the directives he [Browning] gave as the direct supervisor of Carter and Zazza.

54. At the July 10, 2019 meeting, Gary Mertins became physically angry, he was observed with a red face and tense muscles, physically shaking as a result of the level of anger he had achieved. As Mr. Browning indicated to Mertins that these behaviors he was alleging were violations by Carter were in fact

behaviors and directives, given by Browning to Carter, Mertins began yelling at Plaintiff and Browning. Both Gary Mertins and Merry Bigelow encouraged Plaintiff to quit within the meeting, and that conduct was observed by Browning. Mertins and Bigelow informed Browning not to differ from management's course of action and assertions. At this point, both Mr. Browning and Plaintiff were given the impression that any defense of Plaintiff would lead to serious repercussions and/or termination, based on management's insistent attempts to goad Plaintiff into quitting.

55. After the July 10, 2019 meeting, Gary Mertins transferred to Cumulus Pensacola. Pete Desimone, Cumulus's Regional Vice President, took Gary Mertins' place. Plaintiff remained constantly fearful and anxious about the hostile work environment she faced, due to ongoing hostility Plaintiff faced from Tony Zazza HR Director Merry Bigelow, and Pete Desimone.

56. Plaintiff, who was hired by Desimone in 2013 as a part time employee and then as a full-time employee in February 2014, received a warm reception from Desimone in late July 2019 immediately after his arrival back to Cumulus Melbourne after Gary Mertins was transferred. However, once he met with Cumulus staff, mainly consisting of Merry Bigelow (Melbourne, FL), Tony Zazza (Melbourne, FL), Gary Mertins (Pensacola, FL), and Jimmy Steele (Mobile, AL), Desimone's attitude toward Plaintiff changed.

57. Despite having sign-up sheets on his door to schedule meetings, Desimone refused to schedule meetings with Plaintiff, avoided the Plaintiff within the workplace, and ordered the Plaintiff out of his office without cause when she attempted to discuss an advertising campaign with him. The conduct of Desimone paralleled the conduct of upper management and his predecessor, Mertins, in that he was hostile, dismissive, and unreceptive to Plaintiffs' concerns.

58. In one particular instance, when Plaintiff approached Desimone about approval for a lucrative advertising campaign that would only accept Plaintiff as the sponsor, Desimone ordered Plaintiff out of his office without speaking to Plaintiff about the campaign.

59. On August 14, 2019, Pete Desimone, contacted the Plaintiff via email after work hours, stating that he wanted a meeting with her, set for the August 15, 2019 at 10:00 a.m.

60. During her morning show on August 15, 2019, Plaintiff's company email access was shut down. Upon Plaintiff's arrival she was confronted by Bigelow and Desimone in which she received a notice of termination and a separation from employment agreement improperly labeled with the date August 30, 2019. Plaintiff refused to sign either document as the second document had the wrong date listed. Per her contractual agreement, she was not allowed to

finish out the remaining two weeks of her employment contract, and she was forced to leave the office without an agreement or severance package.

61. Zazza was not confronted about termination.

62. At the time of Plaintiff's termination, the morning show ratings were extremely high. Plaintiff achieved all three bonuses for rating excellence based on viewer ratings, in all three syndicated markets. These markets were from three different regions and Plaintiff rated in the top three rating slots of all three different regions. Plaintiff was terminated based on allegations of poor performance; however, the rating slot bonuses and awards contradicts the position of Cumulus Management at the time of Plaintiff's termination.

63. At the time of her termination, the Plaintiff was due all three performance bonuses for the syndicated markets for all three regions. This was the first time since syndication on September 1, 2016, for which all three goals of performance were mastered by Plaintiff. This contradicts the position of management and the improper termination of Plaintiff for unjust cause.

64. Cumulus openly engaged in disparaging treatment of on-air personalities based on gender, as Plaintiff's male co-host was not harassed, critiqued, written up, or discharged, despite a plethora of errors committed by Zazza.

65. But for the gender-based discrimination Plaintiff faced, Defendant would not have terminated Plaintiff.

## **COUNT I: SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

66. Plaintiff realleges and incorporates by reference paragraph one (1) through paragraph sixty-five (65).

67. Plaintiff is a woman.

68. Plaintiff was, and remains, qualified to perform the duties of radio personality at Defendant's Melbourne, Florida location.

69. Plaintiff performed her job responsibilities satisfactorily up to the date of her termination.

70. Defendant's employee, Tony Zazza, continuously harassed Plaintiff as a result of her pregnancy and gender.

71. Zazza was similarly situated to Plaintiff, as Zazza was Plaintiff's cohost on the same morning show, placed under contract on or about the same time Plaintiff was, and was subject to the same supervisors.

72. Zazza was not terminated at a time of market success and great ratings.

73. Zazza was instrumental in limiting Plainitiff's access to show material through show sheets, and passwords, but was not disciplined for such actions.

74. Zazza was not reprimanded for engaging with listeners on social media.

75. Zazza engaged in unprofessional conduct toward Plaintiff in the presence of management and no action was taken against him.

76. Zazza's discrimination was ongoing from the time Plaintiff announced her pregnancy until Plaintiff's termination.

77. Defendant's employee, Jimmy Steele, subjected Plaintiff to disparate treatment in relation to her male co-host, Tony Zazza, on the basis of Plaintiff's gender, using the weekly coaching calls and his role as Talent Coach to harass the Plaintiff, causing the Plaintiff significant emotional distress.

78. Upon information and belief, Defendant's employee, Jimmy Steele, did not harass or belittle Zazza during the weekly coaching calls.

79. Defendant's employee, Gary Mertins, subjected Plaintiff to disparate treatment in relation to her male co-host, Tony Zazza, on the basis of Plaintiff's gender, which was witnessed and confirmed by Plaintiff's acting supervisor and Cumulus Melbourne's Operations Manager at the time, Joseph Browning.

80. Defendant's employee, Merry Bigelow, subjected Plaintiff to disparate treatment in relation to her male co-host, Tony Zazza, on the basis of Plaintiff's gender.

81. Defendant's employee, Pete Desimone, subjected Plaintiff to disparate treatment in relation to her male co-host, Tony Zazza, on the basis of Plaintiff's gender.

82. Defendant, through the above-referenced employees, issued Plaintiff several disciplinary actions and subsequently terminated her based on behaviors shared by Zazza.

83. Tony Zazza was not written up, terminated, or otherwise disciplined.

84. Defendant's decision to terminate Plaintiff was motivated by her sex, beginning with Plaintiff's pregnancy announcement in March 2017.

85. Defendant's unlawful discrimination resulted in Plaintiff being deprived of income. Defendant's unlawful discrimination also caused and continues to cause Plaintiff emotion distress, mental anguish, loss of enjoyment of life, inconvenience, and embarrassment.

WHEREFORE, premises considered, Plaintiff demands judgment against Defendant for wage damages, compensatory damages, punitive damages, consequential damages, incidental damages, the costs of this action, interest, attorney's fees, and any other, further, and different relief to which she may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this 23rd day of December, 2020.

_____
Cheree Carter, PLAINTIFF

STATE OF FLORIDA
COUNTY OF BREVARD

Personally appeared before me, the undersigned Notary Public in and for said State and County, CHEREE CARTER, by me first duly sworn on oath, doth depose and say that the statements contained in the foregoing are true and correct. (by means of physical presence)

Sworn and subscribed before me on this 23rd day of December, 2020.



_____
NOTARY PUBLIC   Glenn S. Taylor
My Commission Expires: _____

Identification Produced
Driver License

Respectfully submitted,

_____
Christine C. Hernandez
ASB 8252I64H
The Hernandez Firm
P.O. Box 66174
Mobile, AL 36660-1174
Telephone: (251)479-1477
Fax: (251)650-3843
christine@equalizingjustice.com

**DEFENDANT TO BE SERVED BY SHERIFF AT THE FOLLOWING ADDRESS:**

C T CORPORATION SYSTEM
r/a CUMULUS BROADCASTING LLC
1200 South Pine Island Road
Plantation, FL 33324